**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 19-23-DLB-CJS**

HEATHER CONRAD                                                    **PLAINTIFF**

v.                            **MEMORANDUM OPINION AND ORDER**

TRANSIT AUTHORITY
OF NORTHERN KENTUCKY, et al.                            **DEFENDANTS**

**\*\*\* \*\*\* \*\*\* \*\*\***

This matter is before the Court on four pending Motions—Defendants Transit Authority of Northern Kentucky and Anthony Trotta's Motion for Transfer of Venue to the Southern District of Ohio (Doc. # 14), Motion for Choice of Law (Doc. # 15), and First Motion for Partial Judgment on the Pleadings (Doc # 16), as well as Plaintiff's Motion for Leave to File an Amended Complaint (Doc. # 23). All Motions have been fully briefed and are ripe for the Court's review. (Docs. # 24, 25, 27, 28, 29, 30, 31, and 33). The Court having reviewed the pending Motions and for the reasons set forth below, the Motion for Transfer of Venue to the Southern District of Ohio is **denied**, the Motion requesting that the Court apply Ohio law is **granted**, and the Motion for Leave to File an Amended Complaint is **denied**. The Court will **defer** ruling on the First Motion for Partial Judgment on the Pleadings.

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

On the morning of May 15, 2018, Plaintiff Heather Conrad ("Conrad"), a resident of Ohio, was walking to work in downtown Cincinnati. (Doc. # 1 at ¶ 10). As she walked

across a crosswalk at the intersection of Fourth and Walnut Streets, a Transit Authority of Northern Kentucky ("TANK") bus driven by Defendant Anthony Trotta ("Trotta") struck her. *Id*. at ¶ 11. Specifically, Conrad alleges that the left corner of the bus struck her and knocked her down. *Id*. at ¶ 15. The bus then ran over her, dragged her twenty-three feet, and trapped her underneath. *Id*. at ¶¶ 15–17. Several bystanders aided Conrad at the scene until the Cincinnati Police and Fire Departments arrived. *Id*. at ¶ 18. Employees of the Cincinnati Police and Fire Departments treated her on the scene, and she later underwent extensive medical treatment in Ohio. (Doc. # 14-1 at 2). Conrad claims that she sustained permanent physical and emotional injuries due to this incident, including extensive left leg degloving, right ankle laceration, left hemothorax, left lung contusion, left rib fractures, scalp hematoma, depressed mood, panic attacks, nightmares, and other emotional injuries. (Doc. # 1 at ¶¶ 20, 25).

Conrad subsequently filed suit against TANK, Trotta, and her insurer, Humana Health Plan Inc. ("Humana"), on February 27, 2019. (Doc. # 1). Her Complaint includes six causes of action—(1) a negligence claim against Trotta, (2) a vicarious-liability claim against TANK, (3) a negligence claim against TANK, (4) a punitive-damages claim against Trotta and TANK, (5) a personal-injury-protection claim against TANK, and (6) a subrogation claim against Humana. *Id*. Humana filed its Answer on April 16, 2019, (Doc. # 7), and TANK and Trotta filed their Joint Answer and Affirmative Defenses on April 26, 2019. (Doc. # 12). On the same day, TANK and Trotta jointly filed a Motion for Transfer of Venue to the Southern District of Ohio (Doc. # 14), a Motion for Choice of Law (Doc. # 15), and a First Motion for Partial Judgment on the Pleadings (Doc. # 16). Additionally,

Conrad filed a Motion for Leave to File an Amended Complaint (Doc. # 23) on May 13, 2019. The Court will consider each motion in turn.

## II. ANALYSIS

### A. Motion to Change Venue

Defendants TANK and Trotta first move to transfer this case to the Southern District of Ohio. (Doc. # 14 at 1). Defendants argue they could better litigate this case in Ohio, as Kentucky has no connections to the matter in controversy and Ohio would prove more convenient for the parties and witnesses. *Id*. Plaintiff opposes transfer. (Doc. # 24).

#### *1. Applicable Law and Standard of Review*

Defendants seek to transfer this case to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a), which provides the following: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Under this statute, a district court has "broad discretion to grant or deny a motion to transfer" a case. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (quoting *Coté v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986)); *see also Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). When determining whether a case should be transferred, courts must "construe the well-pleaded allegations in the [c]omplaint as true." *Bell v. Jefferson*, No. 5:18-cv-032-CHB, 2019 WL 4017241, at *9 (E.D. Ky. Aug. 26, 2019).

Section 1404(a) gives district courts discretion to decide motions to transfer on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612,

622 (1964)).  Section 1404(a) exists to save time, energy, and money and to serve the interests of the parties, witnesses, and public.  *Van Dusen*, 376 U.S. at 616; *Kroger v. Bridgewater*, No. 3:11-cv-21-DCR, 2011 WL 3513410, at *2 (E.D. Ky. Aug. 11, 2011).  In determining whether to transfer a case, courts must consider both private interests, such as the inconvenience to witnesses and parties, alongside public interests, including the fairness of the judicial system.  *See Moses v. Bus. Card. Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).  In weighing these considerations, courts in this District employ the following nine factors in determining whether to transfer venue under Section 1404(a):

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.[1]

*Cowden v. Parker Assocs., Inc.*, No. 5:09-cv-323-KKC, 2010 WL 715850, at *2 (E.D. Ky. Feb. 22, 2010) (quoting *Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006)); *see also Bell*, 2019 WL 4017241, at *8; *Thompson Thrift Constr., Inc. v. Hyman Plumbing Co.*, No. 5:13-cv-50-DCR, 2013 WL 3566353, at *2 (E.D. Ky. July 11,

---

[1]     These nine factors have been employed recently in this District.  *See e.g. Bell*, 2019 WL 4017241, at *8.  Courts in this District, however, have used slightly different factors in different cases, although these factors are substantially the same.  *See, e.g., Gorman Co., LLC v. U.S. E.P.A.*, No. 6:10-cv-228-GFVT, 2011 WL 749508, at *3 (E.D. Ky. Feb. 24, 2011) (citing *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 406 F. Supp. 2d 751, 755 (E.D. Ky. 2005)) (describing the factors as "(1) convenience of the parties and the witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice" and also stating that "[o]ther factors include (1) the relative congestion in the courts of the two forums, (2) the public's interest in having local controversies adjudicated locally, (3) the relative familiarity of the two courts with the applicable law, (4) the plaintiff's original choice of forum, and (5) whether the parties have agreed to a forum selection clause"); *see also Dayton Power & Light Co. v. E. Kentucky Power Co-op., Inc.*, 497 F. Supp. 553, 555 (E.D. Ky. 1980) (citing *Schneider v. Sears*, 265 F. Supp. 257, 263 (S.D.N.Y. 1967)).

2013).

The party moving for transfer carries the burden of showing that factors *strongly* support transfer. *Roehl Transp., Inc. v. Kirby*, No. 3:15-cv-58-GFVT, 2015 WL 7188474, at *1 (E.D. Ky. Nov. 13, 2015). It is not enough for the moving party to show that the alternative forum is equally convenient. *Van Dusen*, 376 U.S. at 645. This is because the plaintiff's choice of forum "should rarely be disturbed." *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984) (quoting *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947)); *see also Cowden*, 2010 WL 715850, at *2 (finding plaintiff's choice of forum entitled to "considerable weight"). Additionally, the moving party cannot use the motion to transfer venue as a means of transferring inconvenience from the defendant to the plaintiff. *Cowden*, 2010 WL 715850, at *2.

## 2. *Factors Weighing in Favor and Against Transfer*

The factors weighing in favor of transfer to Ohio include the locus of operative facts and the forum's familiarity with the governing law. The Plaintiff's choice of forum is an insignificant factor. The remaining factors—convenience of non-party witnesses, the location of relevant documents and relative ease of access to sources of proof, convenience of the parties, the availability of process to compel unwilling witnesses, the relative means of the parties, and trial efficiency and the interests of justice—are all neutral. The Court will address each factor in turn.

### a. Convenience of Witnesses

Defendants characterize all witnesses as residing in Ohio and argue that because of this, Ohio would be "much more convenient." (Doc. # 14 at 4). The convenience of witnesses acts as "one of the most important factors" in deciding whether to transfer under

§ 1404(a).  *Valvoline Instant Oil Change Franchising, Inc. v. RFG Oil, Inc.*, No. 5:12-cv-39-KSF, 2012 WL 3613300, at *7 (E.D. Ky. Aug. 22, 2012) (quoting *Thomas v. Home Depot, U.S.A. Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001)); *see also Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, No. 5:12-cv-314-KKC, 2013 WL 1187009, at *4 (E.D. Ky. Mar. 20, 2013) (citations omitted).  In *James N. Gray Co.*, a sister court in this District found this factor weighed only slightly in favor of transfer out of Kentucky when most witnesses lived in another state, but some witnesses resided in Kentucky.  *James N. Gray Co. v. Airtek Sys., Inc.*, No. 5:05-cv-399-JBC, 2006 WL 196968, at *3 (E.D. Ky. Jan. 24, 2006).  That court made this determination after explaining that it was impossible to know which witnesses would need to appear at trial at that early of a stage in litigation, and therefore it was difficult for that court to gage the venue's convenience for the witnesses.  *Id.*

Here, Defendants allege all witnesses reside in Ohio.  (Doc. # 14 at 1).  Plaintiff, however, counters that some witnesses, including (1) a passenger on the bus who was allegedly speaking to the bus driver at the time of the accident and (2) employees of TANK, reside in Kentucky.  (Doc. # 24 at 5).  The situation here is similar to that in *James N. Gray Co.* because while most witnesses live in Ohio, more than one potential witness resides in the forum state of Kentucky.  Following the reasoning of *James N. Gray Co.*, this factor would appear to weigh slightly in favor of transfer to Ohio.

When the potential courthouses are close together, however, courts have found this factor to be neutral.  *See Diversified Metal Distribs., LLC v. AK Steel Corp.*, No. 3:06-cv-55-KKC, 2007 WL 403870, at *3 (E.D. Ky. Feb. 1, 2007) (finding this factor to be neutral when witnesses for either party would have to travel a short distance from Ohio

to Kentucky).  Therefore, this factor is neutral here because the Southern District of Ohio is just across the Ohio River from this Court.  The Court is simply not convinced that trying the case in an Ohio courthouse that sits two miles from this courthouse is anything more than marginally more convenient for the Ohio witnesses in this case.  Accordingly, this factor is neutral.

> **b.     Location of Relevant Documents and Relative Ease of Access to Sources of Proof**

Defendants argue this factor moderately weighs in favor of transfer and assert that the relevant documents and evidence, such as police records, and other items that discovery will reveal, are in Ohio.  (Doc. # 14 at 6).  Although the location of "documentary evidence" is a factor to consider when deciding transfer, *Cowden*, 2010 WL 715850, at *4, courts often do not give it much weight because the parties can transfer documents and other records electronically, *see, e.g.*, *Glob. Fitness Holdings, LLC*, 2013 WL 1187009, at *4 ("The advent of electronic discovery has reduced the importance of the actual location of documentary evidence . . . .").  For example, another court in this District found this factor to be neutral when the case does not involve an accident scene or damaged property, and the parties could transmit the documents electronically.  *See Valvoline*, 2012 WL 3613300, at *11.  Here, the documents, such as police records, recordings of the accident, and medical information, can all be transmitted electronically.[2] In this case, there is an accident scene, but this Court is just across the river from downtown Cincinnati, where the accident took place.  This makes both forums almost

---

[2]     The Defendants concede that the parties can transmit the documents and records electronically.  (Doc. # 14 at 6).

equally convenient for viewing the accident scene. As a result, this factor is also neutral in determining transfer.

### c.     Convenience of the Parties

Defendants admit that both forums are equally convenient to the parties but nevertheless argue for transfer, asserting that Kentucky lacks any connection to the accident. *Id.* When considering this factor, the Court examines how convenient the chosen forum is for the Plaintiff and the Defendants. Courts often consider the physical distance between the two forums (and two courthouses) when assessing how burdensome it would be for each party to travel to the chosen or proposed forum. *See, e.g.*, *Valvoline*, 2012 WL 3613300, at *7. For example, a sister court transferred a case to California due to one witness's[3] physical limitations, which made traveling from California to Kentucky problematic. *See id.* The witness residing in California had experienced a "major spinal cord injury which left him permanently paralyzed below his shoulders as a quadriplegic." *Id.* Traveling posed several difficulties for the witness, as he required an overnight medical assistant to travel, and travel increased his likelihood of contracting an illness. *Id.* Ultimately, the court granted the motion to transfer the case to California, as it was more convenient for the parties and witnesses. *Id.*

Courts also transfer cases, however, when the two venues are in close proximity. *See, e.g.*, *Kroger*, 2011 WL 3513410 at *3. In *Kroger*, the plaintiff lived sixty miles from each courthouse, and the court transferred the case to the court closest to the scene of the accident. *Id.* The two-mile distance between the two courthouses in this case,

---

[3]     In *Valvoline*, the witness referenced here was an employee of the party, a company. 2012 WL 3613300, at *1–12. Even though the employee-witness was not a party, the court in *Valvoline* analyzed the convenience to him under the "convenience of the parties" factor rather than the "convenience of the witnesses" factor. *Id.*

however, pales in comparison to the distances in *Valvoline* or *Kroger*, and there are no extraordinary circumstances that show it would be difficult for any party to travel to Kentucky or Ohio.

Additionally, when assessing this factor, courts do not allow transfer of a case in a situation where it would shift the inconvenience from the defendant to the plaintiff. *Cowden*, 2010 WL 715850, at *2. Nothing suggests that it would be inconvenient for either party to litigate in either forum. In fact, Defendants admit as much. (Doc. # 14 at 6). Thus, given the short distance between courthouses and Defendants' admission that both forums are "arguably equally convenient," (Doc. # 14 at 6), this factor is also neutral.[4]

### d. Locus of the Operative Facts

Defendants argue this factor "weighs heavily" in favor of transfer because "all facts supporting Plaintiff's Complaint took place" in Ohio. (Doc. # 14 at 5–6). When deciding whether this factor favors transfer, courts determine in which state the operative facts took place. *Bell*, 2019 WL 4017241, at *9. In assessing whether transfer is preferable, courts may favor the forum where most facts took place, but a showing that all facts took place in that forum is not necessary for a case to be transferred there. *See Glob. Fitness Holdings, LLC*, 2013 WL 1187009, at *4 (finding this factor favored transfer to Utah when many of the events took place in Utah but some events occurred in Kentucky). Here, the parties agree that the accident occurred in the Southern District of Ohio. (Docs. # 1 at ¶¶ 10–11 and 28 at 7). Additionally, Plaintiff received assistance from first responders in

---

[4] Defendants point to the fact that all parties have retained legal counsel in Ohio as relevant to the "convenience of the parties" factor. (Doc. # 28 at 2). The location of counsel, however, is not considered in the § 1404(a) analysis because it is irrelevant. *See Roehl Transp., Inc.*, 2015 WL 7188474, at *3; *see also Mcintosh v. E-backgroundchecks.com, Inc.*, No. 5:12-cv-310-DCR, 2013 WL 954281, at *5 (E.D. Ky. Mar. 11, 2013).

Ohio and underwent medical treatment in Ohio. (Doc. # 14-1 at 2). Although the bus route started in Kentucky, (Doc. # 24 at 2), and certain events, such as the training of Defendant Trotta, may have occurred in Kentucky, most of the operative events took place in Ohio. Therefore, this factor weighs in favor of transferring this case to the Southern District of Ohio.

> **e.    Availability of Process to Compel the Attendance of Unwilling Witnesses**

The Court then considers its ability to compel unwilling witnesses to attend court in each forum. **"**The residence of non-party witnesses [ ] is very important, as their attendance often must be compelled." *Valvoline*, 2012 WL 3613300, at *11. Litigating in a forum where the court could not compel attendance may force the parties to litigate through depositions, and such an outcome is not ideal. *See id*. (citing *Gulf Oil Corp.*, 330 U.S. at 511). In such a case, this factor would favor transfer. *See id*.

Under Federal Rule of Civil Procedure 45, a subpoena may compel a person to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45. Given that the courthouses in this case are very close to each other, it is very likely that all witnesses can be compelled to appear at either courthouse. Although many non-party witnesses are in Ohio, the 100-mile rule will allow this Court to compel their attendance in Northern Kentucky. FED. R. CIV. P. 45. Similarly, all witnesses could be compelled to appear in the Southern District of Ohio. Defendants acknowledge this. (Doc. # 28 at 5).

When both forums have the ability or inability to compel witnesses, courts have deemed this factor neutral. *See, e.g.*, *Bunch v. W.R. Grace & Co.*, No. 2:04-cv-218-DLB, 2005 WL 1705745, at *3 (E.D. Ky. July 21, 2005); *see also Zamora v. Stroman*, No. A-

17-CA-000469-SS, 2017 WL 2634190, at *4 (W.D. Tex. June 16, 2017).  Accordingly, this Court finds this factor to be neutral, as both the Southern District of Ohio and the Eastern District of Kentucky would be equally able to compel necessary witnesses.

**f.    Relative Means of the Parties**

Defendants TANK and Trotta argue that TANK has more means to travel to Ohio, as TANK is an "established entity," and this makes litigation in Ohio more convenient. (Doc. # 14 at 6).   The Court considers the resources of the parties to assess the appropriateness of transfer.  Transfer is inappropriate in situations where doing so would "effectively deprive a plaintiff of access to the courts."  *Mcintosh*, 2013 WL 954281, at *5. Deprivation of access to the courts can occur when a plaintiff does not have the financial resources to litigate in the transferee forum.  *See id*.  When assessing this factor, courts consider that individuals often have fewer financial means to litigate than companies. *Creech v. Blue Cross & Blue Shield of Fla., Inc.*, No. 3:17-cv-335-TBR, 2017 WL 6567814, at *7 (W.D. Ky. Dec. 22, 2017) (citing *Speedshape, Inc. v. Meechan*, No. 11-14670, 2012 WL 1672979, at *4 (E.D. Mich. May 14, 2012)).

Even though Plaintiff resides in Ohio, she admits that she has the means to travel to this Court in Kentucky.  (Doc. # 24 at 6).  Additionally, if she has the means to travel here, further from her home in Ohio, it follows that she also has the relative means to travel to the Southern District of Ohio.  Therefore, neither keeping the case in this forum nor transferring it to Ohio would deprive Plaintiff of her right to access the courts.  TANK asserts that it has the relative means to travel to Ohio, (Doc # 14 at 6), and it follows that TANK would also have the relative means to travel to this Court, as it has its principal place of business in Kentucky.   Finally, Defendant Trotta, a Kentucky resident, and

employee of TANK, would also have the relative means to travel to this Court since he is a Kentucky resident, and he would also likely have the means to travel to a court two miles away in Ohio because of the short distance.  Therefore, because all parties appear to have the means to litigate in either forum, this factor is neutral.

### g.    Forum's Familiarity with the Governing Law

Defendants TANK and Trotta argue that Ohio traffic and pedestrian laws will govern this case, as the accident occurred in Ohio, and that because the Southern District of Ohio would be more familiar with Ohio law, this factor supports transfer.  (Doc. # 14 at 7).  If a case is transferred under § 1404(a), the transferee court must apply the choice-of-law rules of the transferor court.  *Phelps*, 30 F.3d at 663; *see also Valvoline*, 2012 WL 3613300, at *11 (citing *Van Dusen*, 376 U.S. 612).  So, in determining whether transfer is appropriate, the Court must next consider what law applies under Kentucky choice-of-law rules and the familiarity of each court with the applicable law.  The Court finds that the Ohio law will apply to this case.  *See* Part II.B. *infra*.  Since Ohio law will apply, and Ohio courts are presumably more familiar with Ohio law, this factor slightly favors transfer to the Southern District of Ohio.[5]

### h.    Plaintiff's Choice of Forum

Although Conrad chose this forum, Defendants TANK and Trotta argue that the lack of connection between this forum and the matter in controversy warrants affording this factor significantly less weight.  (Doc. # 14 at 8).  Courts normally give a plaintiff's choice of forum "considerable weight" when evaluating a § 1404(a) motion.  *Cowden*, 2010 WL 715850, at *2 (citing *MSDG Mobile, LLC. v. Am. Fed., Inc.*, No. 1:05-cv-123,

---

[5]    However, this Court has applied Ohio law in numerous prior cases and has great familiarity with doing so.

2006 WL 515531, at *6 (W.D. Ky. Feb. 28, 2006)); *see also Valvoline*, 2012 WL 3613300, at *5 (describing plaintiff's choice of forum as a "strong factor"). For this reason, courts "rarely" disturb the plaintiff's choice, unless the other 1404(a) factors weigh "strongly in favor" of the defendant's motion to transfer. *Cowden*, 2010 WL 715850, at *2 (quoting *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951)); *Nelson v. Swistock*, No. 5:06-cv-36-KSF, 2006 WL 8446194, at *8 (E.D. Ky. Sept. 28, 2006). Courts give the plaintiff's choice of forum "significantly less weight," however, when there is "little connection" between the matter and the forum. *Valvoline*, 2012 WL 3613300, at *5 (citing *Steelcase, Inc. v. Smart Techs, Inc.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004)). Courts additionally assign the plaintiff's choice of forum less weight when the plaintiff does not live in the chosen forum. *Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016) (citations omitted).

Defendant is correct that even though Plaintiff chose a Kentucky forum, this choice should be given little weight. As mentioned *supra*, the only contacts with Kentucky include Defendant Trotta's residence in Kentucky, Defendant TANK's principal place of business in Kentucky, and one witness's residence in Kentucky. The accident occurred in Ohio, Plaintiff resides in Ohio, most of the witnesses reside in Ohio, and Plaintiff received medical treatment in Ohio. Because only a slight connection exists between this case and Kentucky, as well as the fact that Plaintiff does not reside in Kentucky, the Court affords Plaintiff's choice of forum significantly less weight than it normally would. *Valvoline*, 2012 WL 3613300, at *5 (citations omitted); *see Means*, 836 F.3d at 651 (citations omitted). Because of this, Plaintiff's choice of forum is not a significant factor.

### i. Trial Efficiency and the Interests of Justice

Defendants emphasize Ohio's interest in applying its own law and argue that the connections this case has with Ohio support transfer. (Doc. # 14 at 8). This Court will consider whether the interests of justice support transfer and whether trial would be more efficient in another forum. The interests of justice include "public-interest concerns, such as systemic integrity and fairness." *Moses*, 929 F.2d at 1137. The interests of justice also discourage forum shopping, which courts speculate is occurring when a party seeks to litigate a case in a forum where the party does not reside without giving strong reasons for that choice. *See Roehl Transp., Inc.*, 2015 WL 7188474, at *3 (suspecting the defendant of forum shopping in the request for transfer when defendant's only argument in support of transfer was the location of the attorneys and defendant's residence in the transferee district). In the present case, Plaintiff has given reasons for choosing to adjudicate this case in Kentucky, such as a witness's residence in Kentucky, the location of TANK employees in Kentucky, and the fact that some events, such as the start of the route, occurred in Kentucky. *See* (Doc. # 24). Even though Plaintiff lives in Ohio, she has put forth legitimate reasons for her choice of forum, and therefore, it does not appear that Plaintiff is forum shopping.

In examining the interests of justice, courts also look to the public's interest in having a local controversy adjudicated locally. *See Diversified Metal Distributors, LLC*, 2007 WL 403870, at *4. When both states maintain an interest in the case, the Court is not required to transfer the case. *See James N. Gray Co.*, 2006 WL 196968, at *3. Here, both states have an interest in adjudicating the matter locally. Kentucky has an interest due to Defendant Trotta's residence in Kentucky and Defendant TANK's principal place

of business in Kentucky. *See Payment All. Int'l, Inc. v. Deaver*, No. 3:17-cv-693-TBR, 2018 WL 661491, at *6 (W.D. Ky. Feb. 1, 2018) (finding a district had a "strong interest" in adjudicating the matter when one party's principal place of business was in the district). Ohio also has an interest considering "most of the operating facts occurred there." *See id*. Therefore, given that both Kentucky and Ohio have an interest in this matter, transfer is not required.

Courts also consider trial efficiency in adjudicating a transfer motion. Here, Defendants have not made a strong argument showing a trial in the Southern District of Ohio would be more efficient than a trial in this District. For example, in other cases, courts have found trials would be more efficient in the transferee district when there are related cases in that district. *See, e.g.*, *Gorman Co., LLC*, 2011 WL 749508, at *3; *Bunch*, 2005 WL 1705745, at *3–4. Defendants have not articulated this concern here or provided other strong reasons to show trial efficiency would warrant transfer to the Southern District of Ohio. Plaintiff, however, has also not articulated strong reasons to show a trial in this Court would advance trial efficiency. Because both states have an interest in adjudicating the matter, and trial efficiency does not point to one district or the other, this factor is also neutral.

### j. Weighing the Factors

When some factors favor transfer and other factors do not, such as in this case, the Court has the authority to either keep the case or transfer it. *See Reese*, 574 F.3d at 320 ("Compelling considerations favor both parties' positions, making it difficult to say that the district court would have abused its discretion had he picked either location as the more appropriate forum. The court, in short, had authority to keep the case.").

Additionally, when factors are on both sides, courts have characterized the party seeking transfer as not making a strong enough argument for transfer. *See, e.g.*, *Outdoor Venture Corp. v. Ronald Mark Assocs.*, No. 6:13-cv-11-DLB-HAI, 2013 WL 2147854, at *12 (E.D. Ky. May 15, 2013). In the present case, of the nine factors, two weigh in favor of transfer, one factor is insignificant, and the rest are neutral. Since only two factors weigh in favor of transfer, Defendants have not shown that the balance is "strongly" in their favor, and therefore, the Court does not see reason to "disturb" the Plaintiff's choice of forum. *Reese*, 574 F.3d at 320 (citations omitted).

Although a close case, the Court finds transfer to the Southern District of Ohio is not warranted. Accordingly, Defendants TANK and Trotta's Motion for Transfer of Venue, (Doc. # 14), is **denied**.

## B. Motion for Choice of Law

Defendants TANK and Trotta move for the Court to apply Ohio law to this case (Doc. # 15 at 3). In support, Defendants first reference numerous differences between Kentucky and Ohio tort law and argue that these differences create a conflict between the laws of the two states. *Id*. Defendants assert that because Kentucky lacks connections with this case, the Court should apply Ohio law. *Id*. at 1.

### 1. Conflict of Law

The first step in determining which law applies to a matter before the Court is determining if there is an actual conflict between the laws of the two states that could apply to the case at bar. *See In re Dow Corning Corp.*, 778 F.3d 545, 555 (6th Cir. 2015); *see also Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010). If such a conflict exists, the Court in a diversity action utilizes the choice-of-law

rules of the forum state. *Jones v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 17-cv-47-DLB-JGW, 2017 WL 2785415, at *2 (E.D. Ky. June 27, 2017) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

Kentucky tort law differs from Ohio tort law in a number of ways, including the duty of care required for drivers and the determination of liability, that are relevant to the case before the Court. As to the duty of care required of drivers, drivers in Ohio are not required to look for pedestrians violating drivers' right of way. *West v. Hilton*, No. 3:10-cv-284, 2012 WL 6676893, at *3 (S.D. Ohio Dec. 21, 2012) (citing *Wallace v. Hipp*, No. L-11-1052, 2012 WL 525530, at *3 (Ohio App. Feb. 17, 2012)). Thus drivers must "exercise due care to avoid colliding with a pedestrian in his right of way *only upon discovering a dangerous or perilous situation*." *West*, 2012 WL 6676893, at *3. In other words, the duty "not to injure another who has blocked the right of way and has created a perilous condition . . . only arises . . . after the . . . pedestrian has failed to yield and after the driver with the right of way has realized that there is a clearly dangerous condition in the right of way." *Wallace*, 2012 WL 525530, at *4. In contrast, in Kentucky, there is a duty to "keep a lookout for pedestrians." *McFall v. Tooke*, 308 F.2d 617, 621 (6th Cir. 1962).

Additionally, with regard to liability for negligence, Kentucky uses "'pure' comparative negligence, meaning 'liability for any particular injury [is determined] in direct proportion to fault.'" *Georgel v. Preece*, No. 0:13-cv-57-DLB-EBA, 2014 WL 5500404, at *2 (E.D. Ky. Oct. 30, 2014) (quoting *Kentucky Farm Bureau Mut. Ins. Co. v. Ryan*, 177 S.W.3d 797, 802 (Ky. 2005)). This means a Kentucky resident may recover even if he or she is more than 50 percent at fault. *Id.* In contrast, Ohio does not allow a plaintiff to recover if the plaintiff's fault is "greater than the combined tortious conduct of all other

persons." *Britenriker v. Mock*, No. 3:08-cv-1890, 2009 WL 2392917, at *5 (N.D. Ohio July 31, 2009) (citing OHIO REV. CODE ANN. § 2315.33).   Because tort law in the two states conflicts, the Court will need to perform a choice-of-law analysis.

### 2.   *Kentucky Choice of Law*

As Kentucky is the forum state, Kentucky choice-of-law rules apply.   *See Klaxon Co.*, 313 U.S. at 496.   Kentucky has a strong preference for applying its own law.   *See Nat'l Info. & Commc'ns Equip. Network Inc. v. Willigan*, No. 2:06-cv-28, 2007 WL 2979928, at *3 (E.D. Ky. Oct. 11, 2007).   Under Kentucky choice-of-law rules, "[i]n tort cases, the conflict of laws question should not be determined on the basis of weighing of interests but simply on the basis of whether Kentucky has enough contacts to justify applying Kentucky law." *Kroger*, 2011 WL 3513410 at *3 (citing *Adam v. J.B. Hunt Trans., Inc.*, 130 F.3d 219, 230 (6th Cir. 1997)).   For this reason, Kentucky law should be applied to a tort case "if there are significant contacts—not necessarily the most significant contacts—with Kentucky."   *GRW Indus. v. Gen. Motors Corp.*, 182 F.3d 917, 1999 WL 435161, at *6 (6th Cir. 1999) (unpublished table decision) (quoting *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972)).   If a court finds the case has contacts with Kentucky but classifies these contacts as insignificant, it does not apply Kentucky law.   *See Miller v. Bernard*, No. 2003-CA-000590-MR, 2004 Ky. App. Unpub. LEXIS 237, at *5 (Ky. Ct. App. July 23, 2004).   When Kentucky contacts are found to be insignificant, Kentucky courts will apply the law of the state with significant contacts.   *See, e.g.*, *Triplett*, 422 F. Supp. 2d at 783; *Miller*, 2004 Ky. App. Unpub. LEXIS 237, at *5.   Additionally, "the residency of a given party is not dispositive" in determining which law applies under Kentucky choice-of-law rules.   *See Dukes v. Mid-E. Athletic Conference*, No. 3:16-cv-303-CRS, 2018 WL

6112415, at *3 (W.D. Ky. Nov. 21, 2018) (citing *Reichwein v. Jackson Purchase Energy Corp.*, 397 S.W.3d 413, 414 (Ky. App. 2012)).  Courts have, however, cited to the importance of providing Kentucky residents with protections of Kentucky law rather than allowing another state's laws to govern and result in an adverse outcome. *See, e.g.*, *id* (citing *U.S. Fid. & Guar. Co. v. Preston*, 26 S.W.3d 145, 147–48 (Ky. 2000)) ("[T]he denial to a Kentucky resident of protections afforded by Kentucky law has been a recurring factor influencing how courts' [sic] resolve conflicts of laws.").

### 3. Significance of Kentucky Contacts

Courts have applied Kentucky law after finding significant contacts in vehicle accident cases when a route started and would have ended in Kentucky, both parties had connections with Kentucky, both parties were in the same vehicle, and the vehicle crashed in a nearby state.  *See, e.g.*, *Foster v. Leggett*, 484 S.W.2d 827, 828–29 (Ky. 1972) (applying Kentucky law because of significant contacts, including the fact that the route started in Kentucky, a passenger was a resident of Kentucky, and the driver had contacts with Kentucky, including renting a room and working in Kentucky); *see also Wessling v. Paris*, 417 S.W.2d 259, 260–61 (Ky. 1967) (applying Kentucky law when both parties lived in Kentucky, the accident occurred in Indiana, and the route started and would have ended in Kentucky).  In *Wessling*, the Kentucky Supreme Court said it was "a fortuitous circumstance" that the car accident did not happen in Kentucky, as based on the route, the accident could have occurred in either Kentucky or Indiana.  417 S.W.2d 259, 260 (Ky. 1967).  This case differs, however.  Although the bus route started in Kentucky, Conrad was a pedestrian in Ohio, not a passenger on the bus.  (Doc. # 3 at 1). It was therefore not a "fortuitous" accident that the bus hit Conrad in Ohio; rather, this

accident could only have occurred in Ohio where Plaintiff was crossing the street. *Cf. Wessling*, 417 S.W.2d at 260. Additionally, Plaintiff was not a Kentucky resident, did not get on the bus in Kentucky, and was not travelling to Kentucky, and thus the case is distinguishable from *Foster* as well. *Cf. Foster*, 484 S.W.2d 827.

Additionally, while it is true that the residency of either party is not dispositive, *see Dukes*, 2018 WL 6112415, at *3, courts have used Kentucky law in situations in which there are not many significant contacts with Kentucky other than the plaintiff's residence in Kentucky, *see, e.g.*, *id*. at *3–4. Here, however, Conrad is an Ohio resident, and therefore, Kentucky would not have as much of an interest in providing Kentucky protections for her. *Cf. id*.

Even when there are some contacts with Kentucky, if they are insignificant, the Court will apply the law of another state. For example, in *Miller v. Bernard*, the plaintiff, an Indiana resident, died in Indiana while receiving treatment at an Indiana hospital, but two contacts with Kentucky existed; even so, Kentucky law was not applied. 2004 Ky. App. Unpub. LEXIS 237, at *5. Specifically, in *Miller*, the plaintiff's autopsy was performed in Kentucky, and the defendant was a Kentucky resident. *See id*. The court, however, did not find these contacts significant enough to apply Kentucky law. *See id*. Rather, Indiana law was applied. *Id*. Similarly, in *Triplett v. Minnesota Mining & Mfg. Co.*, a case about asbestos exposure at an Indiana plant, in which a defective mask was shipped from an Indiana manufacturer, the plaintiff's residence in Kentucky as well as the manifestation of his illness in Kentucky were deemed contacts, but not significant contacts warranting the application of Kentucky law. 422 F. Supp. 2d 779, 783 (W.D. Ky 2006). Indiana law was applied instead. *Id*.

Kentucky law does not govern here because there are only insignificant contacts with Kentucky. Rather, Ohio law will govern this case, as the accident occurred there and most of the witnesses reside in Ohio. *See Kroger*, 2011 WL 3513410 at *3 (finding Indiana law would likely apply when the parties did not dispute the accident occurred in Indiana and when the court presumed the majority of the witnesses to the accident would reside in Indiana). Here, Defendant Trotta resides in Kentucky and Defendant TANK is incorporated with its principal place of business in Kentucky. However, aside from Defendants' residences, Defendant TANK's employees' location in Kentucky, one witness residing in Kentucky, and the start of the route in Kentucky, there are no other contacts with Kentucky. In contrast, the Plaintiff is from Ohio, the accident occurred in Ohio, health care providers treated Conrad in Ohio, and other witnesses reside in Ohio. (Doc. # 15 at 1–2). Many of the Kentucky contacts are merely residences in Kentucky, and residency is not dispositive in the choice-of-law analysis. *Dukes*, 2018 WL 6112415, at *3. Also, the location of the start of the route is not significant, as mentioned *supra*, since Conrad was not on the bus when the route started in Kentucky. Although there are some contacts with Kentucky, those contacts lack the significance necessary to apply Kentucky law. There are, however, significant contacts with Ohio, and for this reason Ohio law must be applied. *See Triplett*, 422 F. Supp. 2d at 783. Accordingly, Defendants TANK and Trotta's Motion for Choice of Law, (Doc. # 15), is **granted**, and the Court will apply Ohio law.

## C.     Leave to File Amended Complaint

Plaintiff Conrad moves for the Court to allow her to amend her Complaint (Doc. # 1) to add a negligence-per-se claim, amend her punitive-damages claim, and eliminate

her personal-injury-protection claim. (Doc. # 23 at 2). She also adds photographs and additional facts to the Proposed Amended Complaint. (Doc. # 23-1). Conrad recognizes this Court's discretion to determine whether justice requires granting her leave to amend her Complaint. (Doc. # 23 at 3). She argues that the procedural infancy of this case and the fact that discovery will produce evidence to support additional claims favor granting leave to amend. *Id*. at 3–4. Defendants claims these amendments would be futile and go beyond the scope of her Motion. (Doc. # 31 at 1–2).

### 1. *Standard of Review*

"A party may amend its pleadings once as a matter of course within" the first twenty-one days after it is served. FED. R. CIV. P. 15(a)(1)(A). "In all other cases," courts "should freely give leave [to amend the pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2). The Court, however, need not give leave to amend the complaint if the amendment would be futile. *See Forman v. Davis*, 371 U.S. 178, 182 (1962); *see also McDonald v. Lasslett*, No. 18-2435, 2019 WL 2592572, at *2 (6th Cir. May 28, 2019) (citing *Pittman v. Experian Info. Sols. Inc.*, 901 F.3d 619, 640–41 (6th Cir. 2018)). An amendment is futile if "the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005).

In order to survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, allegations must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. As for legal conclusions, "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Additionally, the Court need not grant leave to amend a complaint when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment . . . ." *See Forman*, 371 U.S. at 182.

## 2. *Futility of Amendment*

Defendants argue the Court should not allow amendment of the Complaint to add a new negligence-per-se claim and bolster a punitive-damages claim because both claims would be futile. (Doc. # 31 at 3). In the Proposed Amended Complaint, Conrad adds a second cause of action for "statutory violations of Anthony Trotta and TANK." (Doc. # 23-1 at 8). In this proposed cause of action, Conrad alleges Defendants violated portions of the Federal Motor Carrier Safety Regulations, which the Kentucky Department of Vehicle Registration adopted. *Id*. Conrad argues that under Kentucky law, specifically KY. REV. STAT. § 446.070, Defendants are strictly liable for "all damages that resulted from any violation of the federal regulations or of Kentucky statutes and regulations." *Id*. The Court, however, will apply Ohio law, *see supra*, and therefore, statutory violations that would result in strict liability under Kentucky law are futile because they would be dismissed.

Additionally, Conrad seeks to amend her Complaint to bolster her punitive-damages argument. (Doc. # 23 at 2). Defendants argue this amendment would also

prove futile. (Doc. # 31 at 10). Because Ohio law will apply, Defendants are correct. Under Ohio law, "a plaintiff may only recover punitive damages if the 'actions or omissions of [the] defendant demonstrate malice or aggravated or egregious fraud, or [the] defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.'" *Baker v. Swift Transp. Co. of Arizona, LLC*, No. 2:17-cv-909, 2018 WL 2088006 at *5 (S.D. Ohio May 4, 2018) (quoting O.R.C. § 2315.21(C)(1)); *Parker v. Miller*, No. 2:16-cv-1143, 2017 WL 3642372, at *3 (S.D. Ohio Aug. 24, 2017). Because Conrad did not allege facts in her Proposed Amended Complaint that would allow the fact finder to infer Defendant TANK directed Defendant Trotta to cause this accident, ratified his actions, or otherwise engaged in malicious conduct itself, the claim would not survive a 12(b)(6) motion to dismiss. *See Parker*, 2017 WL 3642372, at *3 (dismissing the request for punitive damages when plaintiff failed to alleged facts that a defendant trucking company knew its driver would cause a crash); *see also Baker*, 2018 WL 2088006 at *6.

Specifically, Conrad does not allege any facts in her Proposed Amended Complaint of Defendant TANK's conduct. Conrad only alleges that "Defendant, TANK, intentionally and with extreme indifference to public safety and human life managed its bus business in a manner that created a serious and unjustifiable risk of serious physical injury to and/or death of people on public highways." (Doc. 23-1 at ¶ 56). Conrad may be attempting to use this statement to show that TANK "knowingly authorized, participated in, or ratified" actions of Trotta that demonstrate malice or fraud, as this is the standard for punitive damages under Ohio law. *See* O.R.C. § 2315.21(C)(1). The fact section of the Proposed Amended Complaint, however, contains no facts to support her

statement.  (Doc. # 23-1 at ¶¶ 9–33).  While mismanagement might indicate authorization, participation, or ratification of Trotta's actions, Conrad's Proposed Amended Complaint fails to specifically articulate the actions that TANK took or failed to take beyond a mere allegation of TANK's improper management of its company.  Because there are no facts to support it, the statement that TANK created a risk of serious public injury and acted intentionally and with extreme indifference is a merely a conclusory allegation, which will not survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.  Therefore, the amendment to bolster the punitive-damages claim against TANK would also be futile, and the Court will not grant leave to amend for this reason.

### 3.  *Scope of the Amended Complaint and Inclusion of Photographs*

Defendants argue that Conrad's Proposed Amended Complaint contains changes beyond those requested in her Motion.  (Doc. # 31 at 2).  Conrad did not, however, exceed the scope of her Motion by making amendments beyond those she requested.  Conrad, in her Motion for Leave to File an Amended Complaint, directly stated that she wanted to amend her punitive-damages claim, add a negligence-per-se claim, and dismiss the personal-injury-protection claim.  (Doc. # 23 at 2).  The Proposed Amended Complaint attached to the Motion makes other revisions, however, such as adding language to the facts section and including pictures.  (Doc. # 23-1).  The Court does not find the additional language would exceed the scope of her Motion to Amend because the addition of these facts relates to the negligence-per-se claim and punitive-damages claim.

As for the addition of photographs, the Court concludes that such photographs, while certainly relevant and discoverable, should not be filed of record as part of the Complaint.  Although, the photographs in the Proposed Amended Complaint of Conrad's

injured legs are accompanied by explanations of her injuries and are relevant to the issue of whether Defendants acted negligently, (Doc. # 23-1 at 2–7), and the photographs of Defendant Trotta and the bus also are accompanied by explanatory words, such as words alleging that Defendant Trotta failed to look before turning, *id*. at 5–6, the photographs are not necessary for the Complaint.

As the Proposed Amended Complaint (Doc. # 23-1) would be futile after the Court's contemporaneous ruling on choice of law, the Court will allow Conrad to file another motion to amend her complaint should she choose to do so. However, Plaintiff is cautioned not to include photographs in her Amended Complaint. The current Motion for Leave to File an Amended Complaint (Doc. # 23) is **denied**.

## III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)     Defendants TANK and Trotta's Motion for Transfer of Venue (Doc. # 14) is hereby **DENIED**;

(2)     Defendants TANK and Trotta's Motion for Choice of Law (Doc. # 15) is hereby **GRANTED**;

(3)     Plaintiff's Motion for Leave to File an Amended Complaint (Doc. # 23) is hereby **DENIED**;

(4)     Plaintiff may file a renewed motion to amend her Complaint within **twenty (20) days** from the date of entry of this Order;

(5)     Defendants TANK and Trotta's Motion for Partial Judgment on the Pleadings (Doc. # 16) is **deferred**;

(6)     Within twenty-one (21) days from the date of the entry of this Order, the parties, or, if represented by counsel, through their counsel, shall meet, either in person or by telephone, to discuss the nature and basis of their claims and defenses, and the possibilities for a prompt settlement or resolution of the case, and to develop a proposed discovery plan.  *See* FED. R. CIV. P. 26(f)(3).

(7)     Within ten (10) days after the meeting, the parties shall file a joint status report containing:

(a)     the proposed discovery plan;

(b)     the parties' estimate of the time necessary to file pretrial motions;

(c)     the parties' belief as to whether the matter is suitable for some form of alternative dispute resolution such as mediation;

(d)     the parties' estimate as to the probable length of trial; and

(e)     whether the parties will consent to the jurisdiction of the Magistrate Judge (Smith) for all further proceedings, including trial, pursuant to 28 U.S.C. § 636(c). Consent forms are attached to this Order and forms signed by all parties' counsel should be filed no later than the date counsels' joint status report is due.  If all parties, by counsel, so consent, the Clerk of Court shall reassign this matter to the appropriate Magistrate Judge without the necessity of further order of the Court.  L.R. 73.1(c).

(8)     Should the parties find that a joint report is not possible, the parties shall each file individual reports, which the Court shall entertain for the purposes of setting out its Scheduling Order or other appropriate Order.

This 13th day of December, 2019.



Signed By:

*__David L. Bunning__*

**United States District Judge**

K:\DATA\ORDERS\Cov2019\19-23 MOO on Transfer, Choice of Law, Amended Complaint.docx